is Consumer Financial Protection Bureau against Consumer First Legal Group. Mr. Loewy. Good morning, Your Honor. May it please the Court? John Loewy on behalf of the defendants. I'm going to start with restitution, or as we like to think of it, you know, a do-over appeal. This has been decided, and there's no reason to believe the Court got it wrong the first time. And I just want to sort of distill what happened here. In the Court below, for a long time, the plaintiff pursued a remedy. The Court agreed with them and gave them that remedy. We appealed. They defended that remedy. We had a whole appeal, and Your Honor said, the way we're going to measure restitution for that remedy is net profits. So why isn't the approach that was taken recently in the FTC against Credit Bureau Center case equally appropriate here? Yes, there has been a big focus on 13B. The Supreme Court came along and said, wrong. But on the second time around, the Court says, actually, Section 19 is also available. Here, you know, we have this almost angels dancing on the head of a pin discussion about the difference between equitable restitution and legal restitution and all the rest of it. But we sent this case back to the District Court, and I don't see anything in the opinion that says you are confined to the world of equitable restitution. Well, the difference between the case Your Honor cited was there was a change in law after the Court had ruled. In this case, lieu was decided prior to the ruling. So there was no occasion or justification to go back and start all over on remand. But we would have to agree with your premise that he's limited to equitable relief, and that we limited him to equitable relief in order to agree with that. Where I started was, they sought a certain set of relief, and this Court said the way that relief will be measured is by net profits. And the only reason there even was a remand They said that we understood, or the District Court understood itself to be awarding equitable relief, which is why we applied lieu in the first place. Well, you know, I have three responses to that on why the label would matter. The first is, they argued last time, to the extent the District Court thought it was equitable, we should recharacterize it as legal in light of lieu, and you could affirm it on that basis. And your Honor said, no. They tried and they lost. But for the fortuity that net profits hadn't been calculated the first time, there wouldn't have even been a remand. Your Honors would have entered judgment on net profits. It was just a coincidence, a fortuity, that we didn't know net profits because they hadn't been litigated below. I'm not sure we said that, but go ahead. But if you had known net profits, there wouldn't have been a remand to calculate net profits. Well, I don't know. I mean, this was all based on the premise of what did— you know, we review actually what District Courts do, not what they might have done or could have done. And what we thought the Court was doing was looking at equitable restitution. Frankly, I mean, these are just like musty old distinctions about juries deciding things and judges deciding things. So what Judge Conley does on remand here is he says, okay, you know, I understand Lou is there now. I understand this remedy is off the table, just as happened in the Credit Bureau case. But he takes another look at it, and the statute actually allows for quite a few different things. The statute allows even for remedies in the nature of a refund. And so what it seems to me that the judge does is he says he accepts part of your argument, that there was some value and a 100 percent refund wasn't called for, but he kind of ballparks it and he says 50 percent is what it's going to be. And then he follows our instructions. He goes to the strict liability standard, but he uses a different discount factor. So overall, he cuts the remedy in half. I do want to return to the point, though, that there would not have been a remand, but for the fact that we didn't know net profits. I think trying to second-guess what we would have done in an alternative universe is not productive. Let me ask a follow-up to Judge Wood's question, which is did you offer the district judge some means of estimating consumers' loss and compensating it? Well, what we did was follow Your Honor's instructions to recalculate net profits, and we adhered to that strictly. Could you answer my question? Did you offer the judge a means of calculating consumers' loss? What we did, Your Honor, was we said the burden is on them. The answer is either yes or no, and then you can explain. The answer is no because the burden was on them to prove it. I'm sure each side thinks the burden is on the other. Understood. But I just need to know what's going on. You have to understand that from our perspective, the sense of deja vu is overwhelming. You're here arguing that the only remedy is zero, just as the last time, and the Bureau is here arguing that the proper remedy is $22 million, just like the last time, just as if the prior proceedings really hadn't happened, and that leaves appellate judges in the sense of some unease. I hope you can understand why. We are arguing that the remedy is exactly what Your Honor said it was, net profits. You sent it back to calculate net profits. But what you're not paying attention to is what Judge Easterbrook is saying. Your position all along has been that the work that your clients did was not a total loss for consumers, but it wasn't a total gain for consumers either, or so the district judge has consistently found. And so if you're focusing on loss to consumers, maybe 50% isn't a bad guess. It's imprecise, but the burden of going to each single person and figuring out what was done, for whom was it worthless, for whom was it helpful, isn't something the judges necessarily have to do. I take it back to deja vu because I read CFLG 1 very clearly and very carefully, and it said we disagree with the government's position that revenues and losses is what measures it. It is net profits. That's what Your Honor said. There's no reason to change that. Is it your position that lieu applies to legal restitution as well as equitable? Yes, Your Honor. Restitution is restitution is restitution. The distinction is artificial. My goodness. Gareth Jones wrote a treatise about restitution that's more than 3,000 pages long. I don't think he would agree that restitution is restitution is restitution. There are lots of sub-issues that are a big difference between equitable and legal. Your Honor, in 1939, when the courts of equity and chancery merged, it became less relevant because the body of restitution became the same. But what has not changed, though, is the way that it's calculated. You don't have tracing issues. There are material differences. There are. Absolutely are, but not in how it's calculated. There are differences, and the reason the distinction has become less important and that we haven't bumped into it is because maybe it's relevant to whether you get a jury trial, but how you calculate restitution, and there's a whole treatise on this, that the restatement third of restatement and unjust enrichment, it is calculated by the defendant's gain, not the plaintiff's loss. There is no body of law, no cases that say that you calculate restitution differently, whether you're talking about equitable or legal. Yes, there's a difference, and it is. I'm ahead of a pin because it's sort of artificial and it hasn't mattered in 85 years, but it's not how you calculate it. The way you calculate restitution, whether you're in a legal or an equitable box, is by the defendant's gains, not the plaintiff's loss. Otherwise, it's just compensatory damages. But we aren't stuck with that. I mean, what about Section 55C? It allows for these cases brought by the board. It allows courts to, quote, grant any appropriate legal or equitable relief, and it gives all sorts of examples, restitution, refund of monies, lots of things. So why not on remand, as the district judge is saying, you know, maybe some value happened, not nearly what should have happened. There were problems with this business model. The judge decides that this refund type measure is the most appropriate. I think the primary answer to that is CFLG 1. Your Honor wrote an opinion. I know the opinion I wrote, and this panel speaks as a group. You know, these are not my whims out there, I assure you. And Your Honor said that given the totality of the remedy being sought here, the way we are going to measure it is by net profits, and we'd ask you to follow. Well, no, I'll give Lou, you know, just saying if this is an equitable restitution case, Lou tells us that it's got to be net, not gross. Well, then, Your Honor, I would fall back on that. I think, Mr. Movey, that arguing with the panel that issued the opinion about what it wrote is not a productive strategy. If you have some other arguments, I suggest you make them. I will, Your Honor. And I think the main argument is they pursued a remedy. It's what I clunkily called the law of the case forfeiture box. They got in front of the court last time and argued that we are pursuing a remedy, and Your Honor said that remedy is calculated by net profits. If they were actually seeking a different remedy and on a remand they could start over, then they forfeited it because if they were seeking legal restitution the first time in a way that could be calculated differently than net profits, which it can't be, then it was incumbent on them to do that during the first appeal. I think the problem is that before Lou there wasn't a distinction between legal and equitable restitution. And so in the district court, before you came up here the first time, going back and looking at the transcripts and what's available, the argument was for restitution. Nobody was making this legal or equitable distinction because it didn't matter until Lou. And then when you came up here, the Supreme Court had decided Lou, and we said Lou applies when you're seeking equitable relief, which is what the district court understood itself to be awarding. Lou was decided before this appeal. And Your Honors nonetheless said we are not going to recharacterize what the relief you got as legal. It was decided before, unlike the case that Judge Wood brought up. We addressed the issue that was before us based on what the district court had done. And the district court, based on the cases cited in its opinion, was addressing it as equitable relief. It's not up to us to recalculate damages. That's what they had sought. That's what they had won. And that's what Your Honors were caught on appeal. If you have some arguments that don't depend on arguing with the court about what we said, I suggest you make them. Well, I do believe that either they forfeited it by not bringing it up the first time, or if they did pursue this remedy the whole time, then they've lost it as law of the case because this panel's opinion would cover it. And I believe that when they said the first time, hey, let's recharacterize it as legal, and Your Honors said we reject that argument, that they were not free on remand to start all over again, not free on remand to say we'd like to amend the complaint and throw out a new theory because we didn't appreciate that Lou had this distinction, which it didn't. Because I'll end on that point. Legal and equitable restitution is calculated the same. On the merits, it wouldn't be different if, in fact, it was legal restitution. The Restatement 3rd, Section 49 says the way you calculate restitution is by looking at the defendant's gain. And here the defendant's gain was zero. So even if it was legal, they still don't get where they need to go. There is no dispute that restitution under legal is also judged by net gains and that there are no net gains. I want to talk also about penalties. If the district court is correct, there's $18 million worth of penalties on behavior that warrants no penalties. The defendants provided these services. This is not a case where they took the money and ran, where they defrauded anybody. They took $20 million in fees and spent $20 million providing these services. There were 1,500 clients who got mortgage relief. All of those clients, the district court said, I'm going to not only take away all the money you spent providing it, but I'm going to penalize you $2,500. There is no universe where that makes any sense at all. There's no penalty justified at all. The only offenses for which they're being penalized are taking advance fees, which lawyers can do, not disclaiming in their retainer agreement that they're not going to take advance fees, and telling people that they're lawyers who are going to practice law. So you're almost out of time, but I'm just going to comment maybe for your rebuttal that a lot of the arguments that you make in your brief along those lines, despite your disclaimers, feel to me like they are relitigating liability, that it's not just a remedial point. Our position is – You can do that on – Sure. We've lost liability. Restitution is appropriate, however your honors decide to measure it. But there's no penalty-worthy behavior, and I will save for rebuttal. Certainly, counsel. Mr. Friedel. May it please the Court, Kevin Friedel for the Consumer Financial Protection Bureau. In the prior appeal in this case, the Court affirmed that defendants were liable for numerous violations of federal law and affirmed that when they committed those violations, they were not engaged in the practice of law. Those issues have been resolved definitively. The only questions that remain here is the appropriate amount of redress that defendants should have to give back to the consumers they harmed and whether the district court abused its discretion in setting civil penalties for defendants' violations. I want to start with the redress point where the district court properly ordered legal restitution or refunds on remand, but erred in setting the amount of that award. But what are we supposed to do with this? The judge seems to have pulled this 50 percent figure out of the air, and there isn't any explanation. One can speculate all day long, but why is that good enough? Good enough? It was not good enough, Your Honor. In our cross-appeal – I mean, it may – if we did send it back to the district court and it just elaborated on why it picked the number it did, you wouldn't be any better off than you are right now. Well, I think it did elaborate. It gave its reason, which was that this court had found in the prior appeal that the violations weren't reckless, and reducing the restitution award on that basis was a legal error. That's relevant to damages, not to restitution, right? I express some frustration to Mr. Loewy that after our appeal, he just maintained the same position that the damages are zero. I have the same frustration for you. After our appeal, you maintained the position that the restitution was just the same as it was before, that our appeal didn't – our opinion didn't do anything. Did you offer the district court some means of trying to figure out what consumers lost? Your Honor, restitution is measured by unjust gains, so that is what our arguments were directed to, not – District court thought that legal restitution is measured by consumers' loss. That's what he wrote. Well, I think, Your Honor, in this case that consumer loss and unjust gains essentially are the same amount. No, they can be completely different. Consumers can lose $10 million while the defendant gains zero, or you can imagine all sorts of outcomes. You can't just assume this problem away, and it may be that the 50% comes from both sides were being absolutist. Neither side was helping me figure out what consumers actually lost, and so I took each side's estimate, added them up, and divided by two because nobody offered me anything else I could do, and I'm trying to figure out whether that's a correct understanding, whether you offered him anything else he could do. Your Honor, I don't think it's correct. We sought legal restitution or refunds. Those are determined under a burden-shifting framework. We met our burden to show what we thought was their unjust enrichment. We thought, in this case, that was the full amount of fees, which were themselves – Yeah, I understand that, but I wish you would address my question. Did you offer him anything else other than saying, we want exactly what we got before and got reversed on, and the other side saying exactly the same thing? Did anybody offer the district court any other alternative than all or none? Your Honor, under the court's burden-shifting framework, no. We asked for the full amount. The answer is no. You didn't even dispute their net profit calculation. No. What we said to the district court was that if that calculation was appropriate, there was going to be a need for further discovery to dig into the numbers that they had provided on remand. It seemed kind of late to start asking for additional discovery. Certainly, Your Honor, but this was what the evidence that they came forward with was not in the summary judgment record. It wasn't in the trial record. They came forward in remand with sort of a wholly new calculation of here is our profits, and we just pointed out, look, we're going to have to dig into that. The court shouldn't take their word for it. We certainly weren't going to. But I think just to maybe return to this all-or-nothing point, we sought the return of all of the illegal fees that they wrongfully took from consumers. I don't understand that. You've said that now several times, and that's obviously what you did seek, but you're not disputing, are you, that there were more than 1,000 people, a substantial number of people, obtained mortgage relief from their efforts. Could they have done it on their own or on a website or with a free service? Maybe they could have, but they did get a tangible benefit, which was whatever, the restructuring or the relief on their mortgages. And so for you to say, well, it's the full $21.7 million, and then to say, well, but actually there was value conveyed by this group in some instances, maybe not $21.7 million, but, again, there's just no evidence exploring how we're supposed to make these adjustments in the light of at least the philosophy of the Lew case and other guidance that we have. So I want to address that minority of people who did get a loan modification. Even those people were deceived. Even they are entitled to their money back. Why? Because they got value for their expenditures. Maybe they overpaid. That happens with cartels. It happens with all sorts of people. Defendants sold them on this idea that they'd be providing expert legal representation to help them save their homes. Defendants didn't provide that at all. This is sort of analogous to a medical office that promises you care by the best doctors at top dollar, and if you go to that office and you're seen by the file clerk in the billing office, I don't think it really matters if that person happens to correctly treat you. But did you introduce any evidence? You could, for example, have compared what happened to these consumers with what happened to consumers who applied on the web on free legal services, on free services, without paying any fees to anyone. Did you do that and compare what the success rates were? That would be one means of estimating the value of defendant services. This court affirmed in the prior appeal that defendant success rate was not different from what was available for free. That might be the basis of an argument in the district court about consumers' laws, but I don't see how it supports, well, the argument everything they got counts as restitution. Again, Your Honor, what we did on remand was- What it would show is just an overpayment. They paid $3,600 or whatever that average number was instead of zero or whatever time they spent on their computer. Under the applicable legal framework, that was their burden to come forward and show that- Yes, I know. Everybody says the other side has the burden. I hope you can see why this is frustrating. Everybody says the other side has the burden, and therefore we don't have to help the district judge. And both sides said that. And we end up here with the sense that we haven't been making much progress. I think the difference is, Your Honor, our position is actually supported by this court's precedent, including the decision in Trudeau, which talks about this burden-shifting framework. And also, what we saw is essentially the same relief that this court just affirmed in the Credit Bureau Center case. There you had defendants that deceived people, tricked them into paying these automatic recurring fees. There was only $30 a month here. They were charging people up to $1,000 a month. And what the FTC asked for was that they have to give back the fees that they wrongfully took. That's exactly what we asked for in the district court. I know that's what we had asked for in the district court. But there was another value in the Credit Bureau case. They lured people in. Oh, we'll give you a credit score for free, but in a little tiny, fine print. And by the way, we're going to charge you from now to the end of time $30 a month. For what? For nothing. Here, at least your opponent argues, and the record seems to show, that a decent number of people received mortgage relief. So there was an exchange. Well, in addition to the point I mentioned that even they were deceived, we don't know if people would have wanted to sign up for this service if they knew the truth, I would again point to Trudeau where this court said that the burden is on the defendants. This is the court's holding that to get a deduction for so-called satisfied consumers. The statute here is a little broader. It provides that the court could grant any appropriate legal or equitable relief, which is a little broader than the other statute. I think that's right, Your Honor. And one well-established form of relief is exactly what the FTC got, and this court approved in the Credit Bureau Center. That's what we asked the district court here. Given that broader language, why was it error for the district court to discount the amount, the full amount that you were seeking? One, because we think that defendants had to come forward and justify any offsets, which they didn't do, but also— And why didn't you, though? I mean, this is what Judge Easterbrook has asked 10 times, you know, but why didn't you help the court? I mean, just resting on burdens of proof is a little risky. I mean, telling the court there was some value, not complete value, and if only the court had explained itself more fully, it would be a little easier for us to attack this. But the court could well have thought that there needed to be some remedy, but something other than all or nothing was appropriate. And I don't mean to suggest we're relying only on burdens of proof. We don't think any offsets were appropriate. We think $21.7 million is what they wrongfully took from people. And we think it's a straightforward remedy that they be required to give that back as legal restitution or refund of monies. And, you know, again, I think as one of Judge Easterbrook's questions to my friend on the other side suggested, the defendants did not come forward and make any arguments. They didn't engage on what should be the proper amount of refunds or legal restitution. They had exactly one argument, which is that this panel had already resolved this issue and precluded anything other than net profits. And, you know, they pursued that litigation strategy to their peril and didn't engage, didn't try to help the district court assess what this remedy. But what's the court's error because you hadn't established recklessness discounting that amount? What prevents or precludes the court from doing that given the inappropriate legal or equitable relief language? Your Honor, I think that, and thank you for returning me to this point, the fact that their violations weren't reckless just has no bearing on what the Bureau was asking for, which was, you know, their unjust enrichment to be returned to consumers. But the district court thought that was appropriate. So what precludes? I understand you argued you didn't think it had anything to do with it. But the district court thought it did. Why was that error that the district court thought that was the appropriate legal relief? Well, we don't read, you know, appropriate in the statute there to mean, you know, anything that a court wants to do. But it wasn't anything within the scope of the remedies Congress has made available, which is what Judge Saney said it meant. Right, and the remedies we were seeking, legal restitution or refunds, just do not turn on the scienter of the defendants. That would be inconsistent, I think, with this court's cases about restitution in the context of an innocent recipient. Even that recipient can be required to give back everything that they wrongfully obtained to the person who, you know, wrongfully, excuse me, rightly possesses it. And what it would mean essentially is that, you know, had the district court found that these violations were knowing, you know, the district court could have increased the restitution award then under this logic and required them to give back, you know, twice as much to the consumers they harmed. And we don't think that would make any sense. We think it was equally error to slash the award based on the irrelevance of their scienter. And I would also point the court to the Albemarle paper decision. We cite briefs from the Supreme Court and the Ninth Circuit's cash call decision, which really squarely address this and hold that, you know, scienter is not relevant to this calculation. So we think that was legal error. That's why we are asking for, you know, instructions to the district court to enter an award of legal restitution or refunds for the full $21.7 million. I would turn, if I could, briefly to penalties. You know, the district court significantly reduced the penalties in the first iteration of this case. The total penalties among the five defendants were more than $37 million. On remand order, just $18 million, so significantly less than the Bureau sought and about 50% of the statutory maximum. You know, this court made two holdings on penalties, one about the number of days that the violations persisted, and one about the scienter. And there's no dispute the district court correctly applied those holdings in calculating penalties. So defendants are left to argue that the district court abused its discretion in setting penalties at that level, and they really can't meet their burden to do that. My time is almost up. So I would just close by saying, you know, defendants took advantage of homeowners seeking help to stay in their homes. They harmed them to the tune of tens of million dollars in fees, and it wasn't just that. People lost their homes while paying defendants thousands of dollars for help they were promised and never received. All we're asking for is that defendants have to give back the money they wrongfully took. There are no further questions we'd ask the court. Thank you, Mr. Friedel. Mr. Lobey, anything further? Well, both sides think the district court got it wrong and that the district's order on restitution should be reversed. And what this court should do is should send it back. We argued that the district court should do what this court told it to do, which is calculate net profits. If the district court's not going to do what this court told it to do, then at least it should get it right. It should determine what is proper restitution, whether you call it legal or equitable, in light of the fact that 1,500 people got exactly what they paid for, 1,500 more submitted applications. The fact is a lot of money was spent to provide these services, and restitution is the same whether you measure it equitable or legal. So there needs to be one final round where the district court actually does the analysis that this court has alluded wasn't done. It can't just spitball it. It has to actually justify restitution, whether you call it legal or equitable. I want to make a point on the credit bureau case. They had sought refunds the first time. In this case, the CFPB never sought refunds. It wasn't until after the remand. So thank you, Mr. Loewe. Thank you. The case is taken under advisement.